

## TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| Byron Albright, **)** | **Docket No.: 2018-01-0109** <span style="color:red">**FILED**<br>**Aug 17, 2018**<br>**02:20 PM(CT)**<br>**TENNESSEE COURT OF**<br>**WORKERS' COMPENSATION**<br>**CLAIMS**</span> |

Byron Albright, )
       Employee, )
v. )
Hercules HVAC Pads, Inc., )
       Employer, )
And )
Hartford Ins. Co. of the Midwest, )
       Carrier. )
)

**Docket No.: 2018-01-0109**

**State File No.: 11611--2018**

**Judge Thomas Wyatt**

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

This Court conducted an Expedited Hearing on August 14, 2018, on Byron Albright's request for medical and temporary benefits. The central issue was whether Mr. Albright was an employee or independent contractor of Hercules HVAC Pads, Inc. (Hercules) when injured. For the reasons below, the Court holds that Mr. Albright was Hercules' employee and awards him medical benefits.

### History of Claim

Mr. Albright suffered injuries when he fell on Hercules' premises. He asserted that Hercules hired him as an hourly employee, while Hercules was adamant that Mr. Albright worked as an independent contractor at his insistence.

Before seeking work at Hercules, Mr. Albright worked as a janitor earning $9.50 per hour. His search for a higher-paying job led him to Hercules in October 2017, where he completed an application and spoke to Hercules' owner, Phil Lynch. Mr. Lynch offered him $12 per hour to work on several projects. He testified he offered the work to Mr. Albright because he previously observed him to be an honest and skilled worker while working for a contractor of Hercules.

The testimony differed as to the particulars of Mr. Albright's work status. Mr. Albright testified he asked for employment instead of contract work because of prior tax

1

issues. Mr. Lynch differed, testifying that Mr. Albright specifically asked to work as a contractor. He stated he knew Mr. Albright did not have a contractor's license and could not afford to hire an accountant to complete the necessary paperwork to operate as a contractor, and thus asked him three times to work as an employee. Each time, Mr. Albright insisted on working as a contractor; thus, Mr. Lynch acquiesced and hired him in that capacity. Mr. Lynch paid Mr. Albright $12 per hour and did not withhold taxes or Social Security from his paycheck or pay its share of Social Security taxes.[1]

Mr. Albright injured his left shoulder and foot, back, and head on November 9, 2017, when he fell from a platform while attaching a chain hoist to an elevator shaft. An ambulance transported him to Erlanger Medical Center, with Mr. Lynch following.

At Erlanger, Mr. Albright underwent numerous radiological tests, which indicated a concussion and dislocations of his left shoulder and left toe. The emergency records did not address work restrictions or his capacity to work.

On December 12, Mr. Albright saw primary care physician Dr. Michael McCoy on instructions from the emergency room doctor. Mr. Albright gave a history that "he fell about 20 ft." and his girlfriend added that he passed out and fell at home two days before the visit. After an examination, Dr. McCoy noted that Mr. Albright's left shoulder was in a sling due to dislocation and his left foot was splinted for a metatarsal fracture. Dr. McCoy prescribed medication and made an orthopedic referral. Mr. Albright returned a month later, reporting left-shoulder and left-arm pain that he stated began after a "[f]all . . . 20 feet from ceiling in warehouse." Dr. McCoy did not address Mr. Albright's work status during either visit.

On January 30, 2018, Mr. Albright saw orthopedist Dr. Daniel Doty complaining of continuing pain and dysfunction in his left shoulder and arm. After reviewing a left-shoulder x-ray, Dr. Doty wrote:

> It is clear that he suffered from acute traumatic rotator cuff tear [that is] massive after his fall at work. In the recovery [he] developed severe adhesive capsulitis which is now limiting his passive range of motion. I ordered an MRI to evaluate . . . the size of the tear[,] the amount of retraction and atrophy of his muscle[,] and for evaluation . . . of possible fixation of his tendons. He does have options to restore his overhead function[;] preferably this would be a rotator cuff tendon repair if possible.

Due to insufficient funds, Mr. Albright has not undergone the MRI or surgery. Dr. Doty did not address his work status.

---

[1] Hercules later provided Mr. Albright a 1099 for tax purposes.

On February 5, 2018, Mr. Albright saw Dr. Jesse Doty (Dr. J. Doty) for left-foot pain. Dr. J. Doty ordered an x-ray and diagnosed "CC joint degenerative change with likely anterior process calcaneus fracture." They discussed surgical and injection options for treatment. Again, lack of funds prevented Mr. Albright from undergoing treatment. He reported continuing but reduced pain when he saw Dr. J. Doty again on May 7. This doctor did not address Mr. Albright's work status on either visit.

Most of the evidence introduced at the Expedited Hearing concerned the mechanics of Mr. Albright's employment status. Mr. Albright testified that he punched in and out at a timeclock, as did Hercules' employees. Mr. Lynch explained that, at first Mr. Albright kept up with his own hours, but Mr. Lynch did not trust the number of hours Mr. Albright gave him. Afterward, Mr. Lynch decided that Mr. Albright would use the timeclock to document his hours. Mr. Albright testified he could leave Hercules' premises during the work day if he punched out.

Mr. Albright testified that Mr. Lynch or Hercules' manager, Turk Garzone, directed his work. He stated that, on the day of hire, Mr. Lynch directed him to put a metal roof on a building and accompanied him onto the existing roof to show him what needed to be done. Mr. Albright added that Mr. Lynch prepared a list of projects for him to complete, and when he finished a project, he asked Mr. Garzone what to do next. Mr. Lynch stated that he made Mr. Albright aware of several projects, but he did not direct his method of work or the order of completion of the projects. Mr. Garzone testified that he showed Mr. Albright a list of projects whenever Mr. Albright finished a project.

Mr. Albright stated that Hercules supplied all the materials needed to perform the jobs he completed, and Mr. Lynch authorized him to obtain help from Hercules' employees to complete any work he could not perform himself. Mr. Lynch agreed that Hercules paid for the necessary materials because he knew Mr. Albright could not obtain credit to buy the materials himself. He also testified that he authorized Mr. Albright to use Hercules' employees on its projects, but he required Mr. Albright to obtain permission from him in advance. Mr. Lynch testified that "[Mr. Albright] had the expertise, and I had the labor" to perform the work.

Mr. Albright wore his own tool belt at work containing basic tools such as a hammer and tape measure. He explained, however, that Hercules provided power equipment, ladders, and chain hoists to complete the assigned projects. Mr. Lynch testified Hercules allowed Mr. Albright to use its tools as needed.

Mr. Lynch testified that he told Mr. Albright he could arrive at work at whatever time he chose. However, Mr. Albright stated Mr. Lynch actually told him he could arrive a little later than the other Hercules employees when he worked on the roof because the roof was wet during the early morning hours. Mr. Garzone testified that Mr. Albright

3

arrived at work at 8:00 a.m. instead of the normal starting time of 7:00 a.m. as approved by Mr. Lynch. Mr. Lynch testified he permitted Mr. Albright to work after Hercules' normal quitting time as long as someone with a key was on site. He would not permit Mr. Albright to work on site alone.

Mr. Garzone testified that Mr. Lynch told him he "hired" Mr. Albright, but stated that Mr. Albright "works for me." Mr. Garzone took that to mean he, personally, had no authority to direct Mr. Albright's work.

Mr. Albright testified that Mr. Lynch retained the right to terminate him. Mr. Lynch agreed, but stated this was true with any hiree, whether an employee or contractor. Mr. Lynch admitted he did not have a written contract with Mr. Albright.

During the Expedited Hearing, Mr. Albright supported his claim for temporary disability benefits by testifying that he had not worked since the date of injury because of the injuries he sustained at Hercules. He introduced documentation of the charges he received for treatment of his work injury in support of his medical-benefits claim.

## Findings of Fact and Conclusions of Law

### General Legal Principles

Mr. Albright need not prove every element of his claim by a preponderance of the evidence to receive relief at an expedited hearing. Instead, he must present sufficient evidence showing he would likely prevail at a hearing on the merits in his entitlement to the requested relief. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

### Employee/Independent Contractor Issue

The Court first addresses the threshold issue of whether Mr. Albright was Hercules' employee or an independent contractor. In *Thompsen v. Concrete Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 3, at *13-14 (Feb. 10, 2015), the Workers' Compensation Appeals Board held:

> To recover workers' compensation benefits, the claimant must be an employee and not an independent contractor[.] Determining whether an individual is characterized as an employee or an independent contractor for workers' compensation purposes requires a specialized factual analysis. No single aspect of a work relationship is conclusive in making this determination[.] The fact that a company did not deduct social security or income taxes is not a controlling factor in deciding whether an employer-employee relationship existed.

4

The Workers' Compensation Law requires that to determine whether an individual is an employee or independent contractor, courts should consider the following factors:

(i) The right to control the conduct of the work;
(ii) The right of termination;
(iii) The method of payment;
(iv) The freedom to select and hire helpers;
(v) The furnishing of tools and equipment;
(vi) Self-scheduling of working hours; and
(vii) The freedom to offer services to other entities.

Tenn. Code Ann. § 50-6-102(11)(D) (2017).[2] While no single factor is determinative, the Tennessee Supreme Court "has repeatedly emphasized the importance of the right to control, the relevant inquiry being whether the right existed, not whether it was exercised." *Thompsen*, at *15. Once it is established that an employment relationship exists, "the burden is on the employer to prove the worker was an independent contractor rather than an employee." *Id.*

The Court's analysis of the statutory factors leads it to conclude that, at a hearing on the merits, Mr. Albright will likely prevail in establishing that he was Hercules' employee. The Court finds that Hercules' owner maintained the right to control Mr. Albright's work and exercised it in several instances, such as designation of his work assignments, the purchase of materials, the authorization for his use of other Hercules employees and equipment, and authorization to work outside Hercules' normal working hours. Mr. Lynch testified he maintained the right to terminate Hercules' relationship with Mr. Albright, whether he was an employee or a contractor.

Further, Hercules did not have a written contract with Mr. Albright and paid him by the hour. Mr. Lynch conceded that he knew enough about Mr. Albright's financial situation to know that he could not operate his own company. The Court holds that Hercules' provision of materials, equipment, and helpers for Mr. Albright makes the work situation appear more like employment.

The Court also considers Mr. Lynch's credible testimony that he intended to hire Mr. Albright as an employee. This also supports the holding that Mr. Albright was an employee for workers' compensation purposes, no matter what he and Mr. Lynch finally agreed on. Other than its failure to deduct taxes and Social Security from Mr. Albright's paycheck, Hercules offered no evidence to show that Mr. Albright's relationship and work patterns would have changed had Mr. Albright agreed to work as an employee, as

---

[2] The Workers' Compensation Reform Act of 2013 did not change this language, although it became re-codified as Tenn. Code Ann. § 50-6-102(12)(D)(i)(a) (2017).

Mr. Lynch wanted. As the Appeals Board wrote in *Thompsen*, "the fact that a company did not deduct social security or income taxes is not a controlling factor in deciding whether an employer-employee relationship existed."

In conclusion, the Court holds that, for workers' compensation purposes, the parties' agreements do not affect whether a particular work relationship is one of employment or contract. Here, the Court holds that the evidence leads to but one conclusion: that an employment relationship existed between Mr. Albright and Hercules. The Court holds Mr. Albright will likely prevail on that point at trial.

### *Medical Benefits*

In *Barrett v. Lithko Contracting, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 93, at *7-8 (Dec. 8, 2016), the Appeals Board set forth the framework for analyzing a claim for medical benefits where the employer denied the claim without providing medical benefits:

> [A]n employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice and/or that it may be subject to penalties for failure to provide a panel of physicians and/or benefits in a timely manner.

The Court holds the above principle applies here. Hercules' denial of Mr. Albright's claim required him to seek medical treatment on his own, beginning with emergent treatment and culminating with orthopedic recommendations for surgery and/or injections that he has not undergone due to insufficient finances.

The medical records establish that, at a hearing on the merits, Mr. Albright will likely prevail in establishing that the ambulance care he received and his treatment at Erlanger Medical Center, by Dr. McCoy, and by the two Dr. Dotys were related to the injuries from the fall at Hercules. Thus, the Court orders that, upon presentation of the bills to Hercules' counsel, Hercules shall promptly pay the bills. Because Mr. Albright has already established a patient-doctor relationship with them, Hercules shall authorize Drs. Daniel and Jesse Doty to treat his injuries. Hercules or its carrier shall promptly communicate that authorization to the physicians' offices, and schedule Mr. Albright appointments to see the Drs. Doty as soon as practicable. *See Thompson v. Comcast, Inc.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *21-22 (Jan. 30, 2018).

### *Temporary Disability Benefits*

Mr. Albright seeks temporary disability benefits solely on his own testimony that he cannot work. The Appeals Board previously affirmed the denial of a claim for

6

disability benefits because the employee failed to introduce sufficient medical proof of the employee's ability to work. *See Young v. Young Elec. Co.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 41, at *12-13 (Sept. 14, 2016). In view of the absence of medical evidence establishing Mr. Albright's disability to work, the Court holds Mr. Albright will not likely prevail at trial in establishing his entitlement to temporary disability benefits. Thus, the Court denies his request at this time.

*Evidentiary Issue*

Mr. Albright asked to present the testimony of Turk Garzone by telephone. Hercules objected because (1) Mr. Albright did not give notice of his intent to call Mr. Garzone as a witness; (2) its counsel would not be given the opportunity to "lay eyes on" the witness; and, (3) the Court could not be sure that someone was not present coaching Mr. Garzone during his testimony.

The Court allowed Mr. Garzone to testify by telephone under the authority of Tennessee Compilation Rules and Regulations 0800-02-21-.14(4) (2018), which provides: "[a] workers' compensation judge may, in conducting an expedited hearing, take testimony in any manner that is practical for the fair and effective resolution of the request for temporary disability and/or medical benefits including taking testimony . . . by telephonic . . . means."

As to the fairness of allowing Mr. Garzone's telephonic testimony, the Court rejects Hercules' claim of surprise. Mr. Albright presented Mr. Garzone as a rebuttal witness; thus he was not required to give notice of his testimony. *See* Tenn. Comp. R. & Regs. 0800-02021-.14(1)(c).[3] The Court gave little weight to Hercules' argument that its counsel should be able to lay eyes on a witness. Before allowing him to testify, the Court established that Mr. Garzone was alone and nothing that occurred during Mr. Garzone's testimony indicated that he was coached as he testified. Therefore, the Court holds that it was fair and beneficial to the effective resolution of the issues presented at the Expedited Hearing to allow Mr. Garzone to testify telephonically.

**IT IS, THEREFORE, ORDERED** as follows:

1. Hercules shall pay the charges for ambulance care, emergent care at Erlanger Medical Center, treatment by Dr. McCoy, and treatment by the two Drs. Doty.

2. Hercules shall authorize the two Drs. Doty to treat Mr. Albright's injuries. It shall communicate the authorization and schedule appointments to see them as soon as practicable.

---

[3] Hercules called its bookkeeper, David Moore, as a rebuttal witness without giving Mr. Albright notice of his testimony.

3. Mr. Albright's claim for temporary disability benefits is denied at this time.

4. This matter is set for a Status Hearing on **November 5, 2018, at 10:30 a.m. Eastern Time**. You must call (615) 741-3061 or toll-free at (855) 747-1721 to participate in the Status Hearing. You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

5. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED August 17, 2018.**

**JUDGE THOMAS WYATT**
**Court of Workers' Compensation Claims**

**APPENDIX**

<u>Exhibits</u>: The Court admitted the following exhibits into the record and considered them in deciding this claim unless excluded due to objection or marked for identification purposes only:

1. Affidavit of Byron Albright;
2. Community National Bank records;
3. 1099 form;
4. Medical bills;
5. Hamilton County EMS records;
6. Dr. Michael McCoy/Primary Healthcare Center records;

8

7. Erlanger Medical Center records;
8. Dr. Daniel Doty records;
9. Dr. Jesse Doty records;
10. Miscellaneous medical records (for identification purposes only); and
11. Erlanger medical bills.

<u>Technical record</u>: The Court reviewed the following items filed with the Clerk in deciding this claim:

1. Petition for Benefit Determination;
2. Employee Position Statement;
3. Dispute Certification Notice;
4. Employer's Additional Issues/Objections to Dispute Certification Notice;
5. Request for Expedited Hearing;
6. Employee's brief; and
7. Notice of Expedited Hearing.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on August 17, 2018.

| Name | Certified Mail | Via Email | Email Address |
|---|---|---|---|
| Tim Henshaw<br>G. Brent Burks<br>Employee Attorneys | | X | tim@mcmahanlawfirm.com<br>brentburks@mcmahanlawfirm.com |
| Blair Cannon<br>Employer Attorney | | X | Blair.cannon@thehartford.com |

PENNY SHRUM, COURT CLERK
wc.courtclerk@tn.gov